**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MINDEN PICTURES, INC.,<br>    *Plaintiff-Appellant*,<br><br>v.<br><br>JOHN WILEY & SONS, INC.,<br>    *Defendant-Appellee*. | No. 14-15267<br><br>D.C. No.<br>3:12-cv-04601-EMC<br><br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted
March 13, 2015—San Francisco California

Filed July 29, 2015

Before: John T. Noonan, William A. Fletcher,
and Morgan Christen, Circuit Judges.

Opinion by Judge W. Fletcher

# SUMMARY[*]

## Copyright

Reversing the district court's judgment, the panel held that Minden Pictures, Inc., a licensing agent for photographers, had statutory standing under the Copyright Act to bring an infringement suit based on alleged violations of the terms of its licenses to John Wiley & Sons, Inc., a textbook publisher.

The panel held that agency agreements between Minden and individual photographers conveyed an ownership interest in the photographers' copyrights sufficient to permit Minden to sue for infringement. The agency agreements transferred legally cognizable rights to reproduce the copyrighted photographs and to authorize the distribution and the display of the photographs by granting licenses to third parties. The panel held that even though the photographers also retained the right to issue licenses themselves, Minden held an "exclusive license" to grant licenses to others, and therefore had standing to sue.

## COUNSEL

Maurice Harmon (argued), Christopher Seidman, Gregory N. Albright, and Alex Rice Kerr, Harmon & Seidman, LLC, Grand Junction, Colorado, for Plaintiff-Appellant.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Steven David Zansberg (argued), Michael Beylkin, and Christopher Beall, Levine Sullivan Koch & Schulz, LLP, Denver, Colorado, for Defendant-Appellee.

## OPINION

W. FLETCHER, Circuit Judge:

Minden Pictures, Inc., is a stock photography company that serves as the licensing agent for dozens of photographers, authorizing third parties to use copyrighted photographs. Under the terms of its contracts with the photographers, Minden has the exclusive right to act as their licensing agent, but the photographers reserve their rights to use the photographs themselves and to license them to others.

Minden brought an infringement suit under the Copyright Act against John Wiley & Sons, Inc., a textbook publisher, alleging that Wiley had substantially exceeded the scope of the licenses granted by Minden by publishing far more copies of books containing the photographs than permitted under the licenses. The question in this appeal is whether Minden, as a licensing agent, has statutory standing under the Copyright Act to bring an infringement suit based on alleged violations of the terms of its licenses to Wiley. The district court held that Minden does not have standing under the Act. We disagree and reverse.

### I.  Background

Minden Pictures, Inc., ("Minden") is a 26-year-old stock photography company based in Watsonville, California. According to Richard Minden, its founder and CEO, Minden

is "one of the world's premium providers of wildlife and nature photos." Minden acts as a licensing agent for individual photographers, displaying copyrighted photographs on its website and granting licenses to end users, including textbook publishers, for the limited use of the photographs. Minden receives a commission, as much as 50 percent, of the fees that end users pay to reproduce the photographs.

Until recently, Minden entered into "Agency Agreements" with the individual photographers for whom it serves as a licensing agent. The Agency Agreements at the heart of this case were executed between 1993 and 2008. The Agreements vary somewhat from photographer to photographer, but they share similar features. Each Agreement contains an "authorization" clause in which the photographers agree to "appoint[] [Minden] as sole and exclusive agent and representative with respect to the Licensing of any and all uses of Images" in the relevant territory. The Agreements also confer upon Minden "the unrestricted, exclusive right to distribute, License, and / or exploit the Images . . . without seeking special permission to do so." The Agreements define "Licensing" as "the marketing, grant, lease, sale, use or other exploitation of reproduction rights to an Image."

The Agency Agreements limit in some aspects, but preserve in others, the photographers' ability to make use of their photographs themselves. The Agreements specify that the photographers "shall not issue any Licenses to any Images, except as provided under this Agreement." But they reserve some authority for personal and, in some cases, commercial use. All of the Agreements permit the photographers to use the images "for personal promotion."

Some permit the photographers to issue licenses for the "editorial use of images in books and magazines." A small number permit the photographers to license images for "commercial" uses, or for "advertising." In other words, the Agreements generally permit the photographers to issue some licenses themselves, subject to the terms of the individual Agreements, but prohibit them from hiring a licensing agent other than Minden.

Finally, each Agency Agreement contains a "copyright" clause. That clause states that "[a]ll images shall at all times remain the sole and exclusive property of the Photographer, including the copyright." Many also state that the copyright "shall be held by [Minden] solely for Licensing purposes described herein." The Agreements provide that they shall remain in force for five years. At the end of that period, the Agreements automatically renew unless either party provides notice of termination.

One company to which Minden granted licenses is an educational publisher, John Wiley & Sons. According to its brief, Wiley is "a 206-year-old publisher of textbooks, professional and trade books, as well as other publications." Minden alleges that Wiley substantially exceeded the scope of the limited licenses it granted Wiley — for example, by printing hundreds of thousands of copies of textbooks containing photographs licensed by Minden despite having acquired a license to print only 20,000 copies of such photographs. Minden attaches to its complaint 228 copyrighted photographs taken by 36 photographers that it alleges it licensed to Wiley. Minden alleges that Wiley has engaged in a longstanding practice of copyright infringement, citing eleven other cases brought against Wiley "alleging copyright infringement claims nearly identical to those

asserted by Plaintiffs in this action." The merits of Minden's allegations are not before us. This appeal concerns only whether Minden is permitted by the Copyright Act to bring an infringement suit against Wiley for exceeding the scope of its licenses.

Minden began to contemplate infringement litigation against Wiley in or around 2010. In March 2010, many of Minden's affiliated photographers executed an additional set of agreements (the "2010 Assignments") that purported to convey an ownership interest in the copyrights to Minden. Under the 2010 Assignments, Minden was authorized "to present, litigate, and settle any accrued or later accruing claims, causes of action, . . . or lawsuits" over "unauthorized uses of the Images." But Minden "agree[d] to reassign its ownership of the Images back to the [photographers] immediately upon the conclusion of any such litigation."

In November 2011, Minden brought an infringement action against another publishing company, Pearson Education, Inc., alleging, as in the case now before us, that "the licenses it sold to Pearson were limited, and that Pearson exceeded those limitations by printing tens, and in some instances, hundreds of thousands of unauthorized copies of the licensed photographs." *Minden Pictures, Inc. v. Pearson Educ., Inc.*, 929 F. Supp. 2d 962, 964 (N.D. Cal. 2013). Minden based its claim to standing under the Copyright Act on both the Agency Agreements and the 2010 Assignments. The district court struck all Minden's allegations based on the Agency Agreements as a discovery sanction, and rejected its claims based on the 2010 Assignments, concluding that they conveyed no more than a "bare right to sue." *Id.* at 968. Minden appealed, but the parties later stipulated to a dismissal of the appeal with prejudice.

Minden brought the current infringement action against Wiley in September 2012.  As in *Pearson*, Minden alleged that both the Agency Agreements and the 2010 Assignments gave it sufficient ownership interest in the photographs to allow it to bring an infringement suit.  After the complaint was filed, Minden and the photographers executed an additional set of assignments (the "2013 Assignments"). These assignments conveyed to Minden "co-ownership of the copyrights in the Images not previously assigned to Minden." Unlike the 2010 Assignments, however, the 2013 Assignments did not provide for their own termination upon the conclusion of litigation.

Wiley moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(1), arguing that because Minden did not have an ownership interest in the copyrighted photographs it had licensed to Wiley, Minden lacked standing under the Copyright Act to bring an infringement suit.  Wiley subsequently brought a motion for summary judgment under Rule 56 on substantially the same ground.

We note that Wiley's Rule 12 motion to dismiss should have been brought under Rule 12(b)(6) for failure to state a claim rather than under Rule 12(b)(1) for lack of jurisdiction, for the issue is statutory rather than Article III standing.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014); *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1172–73 (9th Cir. 2004).  That is, the issue is whether Minden has a statutory right to sue for infringement under the Copyright Act, which is properly addressed in a motion under Rule 12(b)(6), not whether Minden has satisfied the requirements of Article III, which is properly addressed in a motion under Rule 12(b)(1).  *See Cetacean Cmty.*, 386 F.3d

at 1173. Wiley's incorrect reliance on Rule 12(b)(1), however, does not materially affect the appeal now before us.

The district court ruled for Wiley in all respects. First, the court concluded that the Agency Agreements did not confer standing under the Copyright Act to bring an infringement suit. *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 10 F. Supp. 3d 1117, 1120 (N.D. Cal. 2014). The district court reasoned that, rather than transferring ownership of the copyrights to Minden, the Agency Agreements "appear to expressly disavow any such intent." *Id.* at 1125. In the court's view, the fact that Minden was authorized, as the exclusive licensing agent for the photographers, to issue licenses to use the copyrighted photographs did not give it a sufficient property interest in the photographs to permit it to bring an infringement suit. *Id.* at 1129. Second, the court held that Minden could not rely on the 2010 Assignments as a basis for its cause of action because it was issue-precluded by the judgment in *Pearson*. Third, invoking the general rule that standing is evaluated by looking to "the facts *as they exist when the complaint is filed*," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992) (emphasis in original), the court held that Minden could not rely on the later-executed 2013 Assignments.

Minden appeals. For the reasons that follow, we reverse.

## II. Standard of Review

We review de novo whether a party has standing under the Copyright Act to sue for infringement. *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169 (9th Cir. 2013).

## III. Discussion

Minden makes three arguments on appeal. First, it argues that the Agency Agreements conveyed an ownership interest in the copyrights sufficient to permit Minden to sue for infringement. Second, it argues that the district court erred in concluding that the judgment in *Pearson* had issue-preclusive effect in its action against Wiley. Third, it argues that the district court erred in declining to consider the 2013 Agreements on the ground that they were executed after Minden filed its complaint. Because we agree with Minden that the Agency Agreements conveyed a sufficient property interest in the photographs to permit it to bring an infringement suit, we do not reach its second and third arguments.

Under § 501(b) of the Copyright Act, only "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). The "exclusive rights" in a copyright are enumerated at § 106 of the Act. They are the rights "to do and to authorize" others to do six things with the copyrighted work: to reproduce the work, to prepare derivative works based upon the work, to distribute copies of the work, to perform the work publicly, to display the work publicly, and to record and perform the work by means of an audio transmission. *See id.* § 106. We have held that this list of "exclusive rights" is exhaustive. *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 883–84 (9th Cir. 2005) (en banc).

Until the passage of the Copyright Act of 1976, a copyright was seen as "an indivisible 'bundle of rights,' which were 'incapable of assignment in parts.'" *See Gardner*

*v. Nike, Inc.*, 279 F.3d 774, 778 (9th Cir. 2002) (quoting 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 10.01[A] ("*Nimmer*")).  The Copyright Act, however, "eradicated much of the doctrine of indivisibility," *id.*, by permitting a copyright owner to transfer "[a]ny of the exclusive rights comprised in a copyright, including any subdivision of any of the[se] rights," to someone else. 17 U.S.C. § 201(d)(2).  Thus, an author of a novel might convey the right to publish a hardcover edition of the novel to one person and the right to create a movie based upon the novel to another.  *See HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 383 (7th Cir. 2011); *Nimmer*, *supra*, at § 10.02[A].

Further, the Copyright Act permits the copyright owner to subdivide his or her interest in what otherwise would be a wholly owned "exclusive right" by authorizing the owner to transfer his or her share, "in whole or in part," to someone else.  17 U.S.C. § 201(d)(1).  It specifies that the owner can transfer a right, or a share of such a right, via "an assignment, . . . exclusive license, or any other conveyance, . . . whether or not it is limited in time or place of effect."  *Id.* § 101.  That is, either an *assignment* (which transfers legal title to the transferee) or an *exclusive license* (which transfers an exclusive permission to use to the transferee) qualifies as a "transfer" of a right in a copyright for the purposes of the Act. *See Corbello v. DeVito*, 777 F.3d 1058, 1064 (9th Cir. 2015); *HyperQuest*, 632 F.3d at 383; *Nimmer*, *supra*, at § 10.02[A].

It is established law under the 1976 Act that any party to whom such a right has been transferred — whether via an assignment or an exclusive license — has standing to bring an infringement action based on that right.  *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1146 (9th Cir.

2008); *Nimmer*, *supra*, at § 12.02[B][1]. Thus a party granted an exclusive license to display a work may bring an infringement action challenging the unauthorized display of that work by another party, even though the licensee does not hold legal title to the work. *Nimmer*, *supra*, at § 12.02[B][1] ("As the owner of 'an exclusive right under a copyright,' an exclusive licensee is 'entitled . . . to institute an action for any infringement . . . .'" (quoting 17 U.S.C. § 501(b))).

However, a party granted a mere "nonexclusive license" — as, in this case, Wiley's license to reprint a copyrighted photograph in a textbook — cannot bring an infringement suit. *See* 17 U.S.C. § 101; *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 32 (2d Cir. 1982). Wiley argues that Minden cannot bring an infringement suit because Minden has been granted, at most, a "nonexclusive license" to authorize the reproduction, distribution, and display of the photographs. We disagree.

First, we have no doubt — indeed, we do not understand Wiley to contest — that the Agency Agreements transferred an interest in a legally cognizable right in the photographers' copyrights. The Agency Agreements explicitly permit Minden to reproduce, and to authorize the reproduction of, the copyrighted photographs. Reproduction is one of the six "exclusive rights" described in the Act. 17 U.S.C. § 106(1) (listing, *inter alia*, the right "to reproduce the copyrighted work in copies or phonorecords" as an exclusive right). Further, Wiley does not appear to dispute that, as the photographers' licensing agent, Minden had the right "to authorize" both the distribution and the display of the photographs by granting licenses to third parties such as Wiley. The right "to authorize" these acts is also an "exclusive right" under the Act. *See id.* § 106(3), (5).

Minden thus had an interest in a legally cognizable right under the copyrights. The only question is what kind of interest Minden possessed.

Wiley makes two arguments regarding why the Agency Agreements did not convey a sufficient interest to Minden to permit it to bring an infringement action. First, Wiley argues that the photographers did not *assign* their copyrights (or a right under their copyrights) to Minden under the Agreements. We agree that the Agency Agreements did not assign the copyrights themselves. The Agreements explicitly state that the photographs shall "remain the sole and exclusive property of the Photographer, including the copyright." The Agreements also impose certain limitations on Minden not generally associated with legal title. For instance, Minden must seek the photographers' approval before issuing certain kinds of licenses. Further, the Agreements permit either party to end the licensing relationship at specified intervals. We thus agree with Wiley that the Agreements do not make Minden the legal owner of the copyrights.

Wiley argues, second, that, read as *licenses*, the Agency Agreements are no more than "nonexclusive licenses" that are insufficient to permit Minden to bring suit. We disagree. The thrust of Wiley's argument is that the Agency Agreements do not grant "exclusive licenses" to Minden to grant licenses to third parties, because the photographers retain the right to issue licenses themselves. That is, Wiley argues, because Minden was not the sole party authorized to issue licenses to the photographs, it cannot have held an "exclusive license" that would permit it to bring suit under the Act. This argument runs contrary to the divisibility principle embodied by the 1976 Act, and to the bulk of the

caselaw and commentary in this field. Wiley's argument is inconsistent with the notion that, under the 1976 Act, a single copyright, or right thereunder, may be divided between parties, with each co-owner entitled to sue to protect his or her interest in the right. As we recently explained in the context of copyright ownership, "the word 'exclusive' in [the Act] cannot mean that only sole owners possess 'exclusive' rights." *Corbello*, 777 F.3d at 1065. "If an 'exclusive right' could only be possessed by a sole owner of a copyright, a co-owner would be unable to bring an infringement action to protect his interest." *Id.*

We see no reason why the divisibility principle should not apply with equal force when the interest granted is an exclusive license to grant licenses to others. The reason the Act prevents a holder of a "nonexclusive license" to use a copyrighted photograph from bringing an infringement action against others who use the same photograph is that such a licensee has no more than "a privilege that protects him from a claim of infringement by the owner" of the copyright. *W. Elec. Co. v. Pacent Reproducer Corp.*, 42 F.2d 116, 119 (2d Cir. 1930); *see* Roger D. Blair & Thomas F. Cotter, *The Elusive Logic of Standing Doctrine in Intellectual Property Law*, 74 Tul. L. Rev. 1323, 1347 (2000). That is, because such a licensee has been granted rights only vis-à-vis the licensor, not vis-à-vis the world, he or she has no legal right to exclude others from using the copyrighted work, and thus no standing to bring an infringement suit. *See Hyperquest*, 632 F.3d at 385; Blair & Cotter, *supra*, at 1347. But when a licensee has been granted rights vis-à-vis the world — even if he or she shares those rights with another party, including the owner of the copyright — we see nothing in the Copyright Act that requires us to deem such an arrangement

a mere "nonexclusive license" insufficient to give rise to standing to sue.

Patent law, which has long recognized the distinction between exclusive and nonexclusive licenses, follows the rule we observe here. As early as 1930, the Second Circuit rejected the argument that the existence of a residual interest in another party turns an exclusive license into a nonexclusive one:

> The definition of an exclusive license . . . might be thought to imply that an 'exclusive licensee' is a sole licensee. But we do not so understand it. A bare license might be outstanding in one when the patent owner grants a license to another accompanied by the promise that the grantor will give no further licenses. In such a case, the second licensee needs the protection of the right of joinder in a suit against infringers as much as though he were sole licensee. We see no reason why he should not have it, and we think the authorities recognize his right.

*Western Elec. Co.*, 42 F.2d at 119. More recently, the Federal Circuit has adopted the same position. *See WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1266 (Fed. Cir. 2010) (rejecting the argument that "that for a licensee to be an exclusive licensee of a patent, the licensee must be the only party with the ability to license the patent"); *Intellectual Prop. Dev., Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1347 (Fed. Cir. 2001). In the words of one prominent treatise, "one who takes an 'exclusive' license subject to a preexisting license may lack true exclusivity, but

nonetheless possesses the legal right to exclude third parties (other than the existing licensee) . . . and, thus, has . . . standing to sue for infringement." 2 Roger M. Milgram, *Milgram on Licensing* § 15.08. Put more simply, we agree with the Seventh Circuit that the essence of an "exclusive" license under the Act is that "the copyright holder permits the licensee to use the protected material for a specific use and further promises that the same permission will not be given to others." *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996).

Minden has been given just such a promise. Under the Agency Agreements, Minden is the "sole and exclusive agent and representative with respect to the Licensing of any and all uses" of the photographs. That is, the photographers have promised that Minden, and only Minden, will have the power, as the photographers' licensing agent, to authorize third parties to reproduce, distribute, and display the photographs. That the photographers have retained some limited degree of authority to grant licenses themselves does not eliminate Minden's interest in the copyright as the sole entity to act as the photographers' licensing agent. It merely means that *both* Minden and the photographers, under the terms of the Agreements, can prevent those third parties who have not received permission to use the photographs from using them. To hold otherwise would be inconsistent with the divisibility principle embodied by the 1976 Act.

To hold otherwise would also be inconsistent with common sense. If the photographers had never entered into the Agency Agreements, but instead had issued licenses directly to Wiley, there would be no doubt that they could bring infringement actions over the violations Minden alleges in its complaint. We see no reason why, having appointed

Minden to manage the commercial use of their photographs in the first instance as their licensing agent, the photographers should not also be able to rely on Minden to protect and defend the licenses that it has issued on their behalf.  Nothing in the text of the Copyright Act, nor in the Agency Agreements, compels a contrary conclusion.

By honoring the parties' contracting expectations, we also remove what would otherwise be a significant practical disadvantage in seeking to protect a copyrighted work.  If Minden could not bring an infringement suit on behalf of the photographers for whom it serves as a licensing agent, those photographers would have to bring suit individually, either in individual actions or in a single suit under Federal Rule of Civil Procedure 20.  Both procedural alternatives have significant disadvantages.  In a suit against Wiley brought by an individual photographer, alleging infringement only as to his or her own photographs, the expenses of litigation would very likely dwarf any potential recovery.  And in a suit under Rule 20, both the total cost of litigation and the burdens of coordination would be significant, given the complexities of litigating on behalf of thirty-some named plaintiffs.  The practical disadvantages of these two alternatives compared with the prospect of licensing agents bringing suit as sole plaintiffs are likely obvious to defendants such as Wiley, and it is not implausible that Minden's inability to bring an infringement suit would be an incentive to engage in infringing behavior.

Because we conclude that the Agency Agreements convey the rights to reproduce, distribute, and display the photographs to Minden via an "exclusive license" to grant licenses to third parties, we hold that Minden may bring an infringement action to remedy the unauthorized reproduction,

distribution, and display of the photographs by those to whom it has granted licenses. We do not reach Minden's remaining arguments.

## Conclusion

We hold that Minden has standing to bring an infringement action under the Copyright Act. We therefore reverse the judgment of the district court.

**REVERSED.**