# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-11201

United States Court of Appeals
Fifth Circuit

**FILED**

October 24, 2018

Lyle W. Cayce
Clerk

JOSE LUIS HERNANDEZ,

Plaintiff–Appellant,

versus

RESULTS STAFFING, INCORPORATED,

Defendant–Appellee.

Appeal from the United States District Court
for the Northern District of Texas

Before SMITH, CLEMENT, and COSTA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

"If this case is an example, the term 'civil procedure' is an oxymoron." *Green v. GTE Cal., Inc.*, 34 Cal. Rptr. 2d 517, 518 (Cal. Ct. App. 1994). It comes before us for a second time, more than five years after Results Staffing, Incorporated ("RSI"), fired Jose Hernandez for failing to report to work. Hernandez appeals the interlocutory order granting RSI's Federal Rule of Civil Procedure 60(b) motion for relief from our prior judgment. *See Hernandez v.*

No. 17-11201

*Results Staffing, Inc.*, 677 F. App'x 902 (5th Cir. 2017).  We affirm.

## I.

RSI, which provides unskilled day laborers to third parties, employed Hernandez, an Army reservist, beginning in early 2013.  After attending a weekend military training session July 12–14, 2013, Hernandez failed to appear for work on Monday, July 15, and instead visited a local emergency room complaining of a headache and lower back pain.  RSI fired Hernandez for violating the company's "no call/no show" policy, which "requires employees to call in four hours before a scheduled start time if they are unable to report to work."  Hernandez sued in 2014, alleging that RSI had violated his rights under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA").

RSI served Hernandez with two requests for production concerning medical records from his July 15 visit to the emergency room.  The first request ("No. 12") sought "[a]ll documents related to any visits [Hernandez] had with civilian medical personnel in July 2013, including all documents related to [Hernandez's] visit to the hospital on July 15, 2013, as alleged in [his] [p]etition."  The second request ("No. 19") sought "[a]ll documents relating to any medical treatment that [Hernandez] underwent for the injury alleged in [his] [p]etition."

Hernandez objected to these requests but nonetheless produced a one-page doctor's note in which the attending physician wrote that Hernandez was under his care on July 15, 2013, and would be able to work the next day.  Neither Hernandez nor his counsel gave any indication that additional medical records existed.  RSI later provided Hernandez with an authorization for release of protected health information, which Hernandez signed on March 12, 2015.  RSI did not make use of the signed authorization to obtain the relevant

No. 17-11201

medical records.

Hernandez's counsel received copies of Hernandez's medical records from July 15 on (in his words) "either Friday, May 15th or Monday, May 18th [2015]," shortly before trial.[1]   Hernandez's lawyer claims that he then "attempted to fax them to [RSI's] counsel, even though [RSI's] counsel already had an authorization to obtain the records from the hospital." The fax allegedly failed to transmit.[2]

Following a non-jury trial in May 2015, the district court denied Hernandez any relief.  We reversed, rendering "judgment in favor of Hernandez" and remanding "the case to the district court to determine [his] damages." *Id.* at 908.

On remand, RSI discovered that "[Hernandez] and his wife had given false testimony at trial concerning [his] service-related back condition and his reason for going to the emergency room."  Additionally, as the district court explained, RSI also found that "[Hernandez] and his counsel had in their possession in advance of the trial hospital records, which should have been, but were not, disclosed to [RSI] before the trial that showed the true reason for [Hernandez's] trip to the emergency room [on] the morning of July 15, 2013."

After that discovery, RSI filed a Rule 60(b) motion for relief from judgment, attaching Hernandez's July 15 emergency room records, which

---

[1] As the district court highlighted in its order granting RSI's Rule 60(b) motion, "[Hernandez] generally represented in his response document that 'documents responsive to this request *in the* possession, custody and *control of the Plaintiff* are attached as Exhibits in response to the Defendant's written discovery requests . . . .'"

[2] At the hearing on the Rule 60(b) motion, the district court examined Hernandez's attorney, Ryan Ray, concerning his claim of a failed fax transmission.  The court noted that the failed fax containing the medical records was allegedly sent at 11:24 pm, well outside of normal business hours, and that Ray discovered the failed fax attempt just days before the Rule 60(b) motion hearing (in 2017).

3

demonstrated that the primary reason for Hernandez's visit was a headache (not a back injury, aggravated by his weekend military service, as he had claimed).[3]   In opposition, Hernandez contended that, *inter alia*, the district court lacked jurisdiction to consider the motion for relief from judgment, the records "confirm that [Hernandez] was treated for a back injury," RSI had failed to exercise diligence in obtaining the records, and counsel's "failure to disclose was inadvertent."

> The district court granted the Rule 60(b) motion, finding that

> [Hernandez's] visit to the emergency room [on] the morning of July 15, 2013, was not for care or treatment of an aggravation of a back condition he suffered while on military duty over the preceding weekend but, instead, was for treatment of a severe headache, probably a migraine in character, that had its onset after he arrived home the morning of July 15, 2013, and that the low back pain he mentioned upon his hospital admission as an associated symptom was not the cause of his visit to the hospital but was a non-disabling chronic back pain that [Hernandez] had been suffering for years.

The court also determined that Hernandez and his wife gave intentionally false testimony "in order to disadvantage and mislead [RSI] in its trial preparation and presentation, and that [this testimony] ultimately misled [the Fifth Circuit] in [Hernandez's initial] appeal."   Furthermore, the district court found that Hernandez's lawyer failed to "take appropriate steps to supplement an incomplete and misleading response [Hernandez] had made to [RSI's] previously served discovery request . . . seeking production of all documents related to [Hernandez's] visit to the emergency room."   The court determined that Hernandez's purpose in doing so was to "mislead[] [RSI] and its counsel into believing that [Hernandez's] July 15, 2013 visit to the emergency room was for

---

[3] At trial, Hernandez had testified to the following: "I woke up, and I was in severe pain.  My left leg was locked at a 90-degree angle.  I had a stabbing sensation in the lower left side of my back.  I was crying.  I was wincing.  At times, it was difficult to breathe."

No. 17-11201

care and treatment of an aggravation of a back condition that he suffered over the weekend [of July 12–14, 2013] while performing military duties."

In granting the Rule 60(b) motion, the district court ultimately concluded, *inter alia*, that Hernandez's actions placed "[RSI] at an unfair disadvantage in defending itself at the trial" and "put the Fifth Circuit at an unfair disadvantage in evaluating . . . the true facts [of this case]." The court also determined, however, that there was "substantial ground for difference of opinion" concerning whether providing a signed authorization for release of protected health information is sufficient to satisfy the signing party's ongoing discovery obligations under Federal Rules of Civil Procedure 34, 26(b), and 26(e). Consequently, the court certified that question for interlocutory review under 28 U.S.C. § 1292(b). We granted Hernandez's unopposed motion for leave to appeal the interlocutory order.

## II.

Hernandez contends that the district court lacked jurisdiction to grant relief per Rule 60(b)(3) because it effectively set aside the judgment of this court. Under the facts and circumstances of this case, we disagree.[4]

Federal Rule of Civil Procedure 60(b) provides grounds by which a "court may relieve a party or its legal representative from a final judgment, order, or proceeding," including in cases involving fraud, misconduct, or misrepresentation by an adverse party.[5] In *Standard Oil Co. of California v. United States*,

---

[4] This court reviews *de novo* an interpretation of a federal rule of civil procedure. *See Lowry Dev., L.L.C. v. Groves & Assocs. Ins., Inc.*, 690 F.3d 382, 385 (5th Cir. 2012). Accordingly, this jurisdictional question is reviewed *de novo*. *See id.*; *see also Frazar v. Ladd*, 457 F.3d 432, 435 (5th Cir. 2006) ("We review de novo . . . any questions of law underlying the district court's decision.").

[5] FED. R. CIV. P. 60(b)(3). The rules also contain a "catch-all" provision that allows for relief from a judgment, order, or proceeding for "any other reason that justifies relief." FED.

5

429 U.S. 17, 17 (1976) (per curiam), the Court held that a district court may entertain a Rule 60(b) motion without first obtaining leave of the appellate court.[6]  The Court found "the arguments in favor of requiring appellate leave . . . unpersuasive," noting that such a requirement "adds to the delay and expense of litigation and . . . burdens the increasingly scarce time of the federal appellate courts." *Id.* at 18.

Because *Standard Oil* did not explicitly state whether its ruling was limited to cases in which the court of appeals *affirms*, Hernandez asserts that where the appellate court *reverses*, the district court is not permitted to entertain a Rule 60(b) motion unless "the court of appeals recalls its mandate." Hernandez cites a previous line of precedent in which the Supreme Court appeared to require the moving party to obtain leave of the higher court before a lower court could disturb its judgment.[7]

Hernandez's theory fails for two reasons.  First, *Standard Oil* overruled *Hazel-Atlas.  See McClure v. F.D.I.C*, No. 93-8216, 1994 WL 14096, at *2 n.5 (5th Cir. Jan. 4, 1994).  Second, this court has not—at least since *Standard Oil*—required a party to obtain its leave before a district court may entertain a Rule 60(b) motion.  In *United States v. Warden*, for example, we declined to hear a Rule 60(b) motion for relief, noting that "[a]pplication for relief under

---

R. CIV. P. 60(b)(6).

[6] Before *Standard Oil*, the Supreme Court and numerous courts of appeals had "required appellate leave before the District Court could reopen a case which had been reviewed on appeal." *Standard Oil*, 429 U.S. at 18.

[7] In *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 248 (1944), the Court noted that a judgment that had been reviewed on appeal "was not subject to impeachment . . . because a trial court lacks the power to deviate from the mandate of an appellate court." *See also In re Potts*, 166 U.S. 263, 267 (1897) (contending that a once a higher court has decided a case on appeal, the lower court "has no authority, without express leave of [the higher] court, to grant a new trial, a rehearing, or a review, or to permit new defenses on the merits to be introduced by amendment of the answer").

No. 17-11201

such rule is to be made . . . to the district court which rendered the judgment."[8]

At least one other circuit has squarely addressed this question. In *De-Weerth v. Baldinger*, 38 F.3d 1266, 1270−71 (2d Cir. 1994), the court held that a district court retains jurisdiction to review a Rule 60(b) motion for relief even after a reversal.[9] The court also found, *id.*, that its refusal to recall a mandate had no bearing on the district court's jurisdiction over a Rule 60(b) motion.

Accordingly, under *Standard Oil* the district court had jurisdiction to consider RSI's motion for relief under Rule 60. "[T]he appellate mandate relates to the record and issues then before the court, and does not purport to

---

[8] Nos. 94-20438, 94-20641, 1995 WL 413034, at *3 (5th Cir. June 22, 1995) (per curiam); *see also Lindy Invs. III v. Shakertown 1992 Inc.*, 360 F. App'x 510, 512 (5th Cir. 2010) (per curiam) (remarking that "in light of changed circumstances" the lower court "did not 'flout[] the mandate by acting on the motion'" (quoting *Lindy Invs. III v. Shakertown 1992 Inc.*, 631 F. Supp. 2d 815, 819 n.6 (E.D. La. 2008))); *Logan v. Burgers Ozark Country Cured Hams Inc.*, No. 02-30325, 2003 WL 1524574, at *3 (5th Cir. Mar. 12, 2003) (per curiam) (highlighting that "the appellate mandate relates [only] to the record and issues then before the court, and does not purport to deal with *possible later events*" (quoting *Standard Oil*, 429 U.S. at 18)); *LSLJ P'ship v. Frito-Lay, Inc.*, 920 F.2d 476, 478 (7th Cir. 1990) ("[A] district court may reopen a case which had been reviewed on appeal without leave from the court of appeals.").

[9] *DeWeerth* involved a suit between two parties over a painting by French impressionist Claude Monet that was allegedly stolen from a castle in southern Germany during the waning days of the Second World War. *See DeWeerth v. Baldinger*, 658 F. Supp. 688, 690 (S.D.N.Y. 1987). After a bench trial, the court awarded the painting to DeWeerth based, at least in part, on a finding that the applicable New York statute of limitations had not yet run. *Id.* at 693–96. The Second Circuit reversed, contending that the applicable New York statute of limitations had, in fact, run. *See DeWeerth v. Baldinger*, 836 F.2d 103, 109–10 (2d Cir. 1987). In 1991, the New York Court of Appeals interpreted the state's statute of limitations in a manner consistent with the district court's original ruling. *See Solomon R. Guggenheim Found. v. Lubell*, 569 N.E.2d 426, 430–31 (N.Y. 1991). Noting that the state court's ruling was sufficient to constitute a "material change in circumstances," the district court granted the plaintiff's Rule 60 motion. *DeWeerth v. Baldinger*, 804 F. Supp. 539, 541 (S.D.N.Y. 1992). In doing so, the district court noted that the Second Circuit had declined to alter its mandate in the wake of *Guggenheim*, which it suggested "may have been because the district court rather than the appellate court is the appropriate initial forum for seeking redress due to post-decisional changes in law or facts." *Id.* The Second Circuit reversed the ruling on the Rule 60(b) motion but noted that the district court did have jurisdiction to review the motion for relief. *See DeWeerth* 38 F.3d at 1270–71.

No. 17-11201

deal with possible later events." *Standard Oil*, 429 U.S. at 18.  The district court determined that Hernandez and his counsel had made numerous misrepresentations to both this court and the district court that were discovered after we ruled.  Those misrepresentations were "possible later events," referenced in *Standard Oil*, sufficient to warrant action by the district court. *Id.* That the Rule 60(b) motion came on the heels of a *reversal*, rather than an *affirmance*, of the initial ruling is an insufficient basis for stripping a district court of its jurisdiction to hear Rule 60(b) motions without leave.  Such a standard would be inconsistent with the rationale behind *Standard Oil*.  *See id.* at 18–19.

## III.

Hernandez asserts that a party who signs an authorization for release of protected health information is completely discharged from the obligation of producing records controlled by healthcare providers.  Again, we disagree.

The production of documents, including medical records, is governed by Federal Rule of Civil Procedure 34(a):  "A party may serve on any other party a request within the scope of Rule 26(b) . . . to produce and permit the requesting party or its representative to inspect, copy, test, or sample [any designated documents] in the responding party's possession, custody, or control."   A request within the scope of Rule 26(b) includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  FED. R. CIV. P. 26(b).  In addition, a party making a disclosure under, *inter alia*, a request for production, "must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some way the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  FED. R. CIV. P. 26(e).

No. 17-11201

Hernandez maintains that, once signed, the records authorization relieved him from any further discovery obligation with respect to the medical records. He cites *Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 593 (D. Nev. 2011), holding that the plaintiff did not violate the discovery rules by voluntarily providing a signed medical authorization for a defendant to "obtain the plaintiff's medical records . . . directly from the providers."[10] Hernandez cites additional caselaw, including *Clark v. Vega Wholesale, Inc.*[11] and *Neal v. Boulder*,[12] for the proposition that a party's medical records are not in his possession, custody, or control.[13] Under Hernandez's theory, he had no further obligation to produce or permit inspection of his medical records because they were in the hands of a third party.

RSI responds that "providing a medical records authorization does not relieve Hernandez of the duty to produce documents in his actual possession, particularly where . . . such documents contradicted key elements of his prior testimony." RSI relies on *Frieman v. USAir Group, Inc.*, for the proposition that a defendant's "ability to obtain the documents from alternate sources does not excuse the plaintiffs from their obligation to produce the documents."[14]

---

[10] The *Jackson* court further asserted that "Rule 34 does not require the responding party to provide copies of documents" but only permits "inspection and copying by the requesting party." 278 F.R.D. at 593.

[11] 181 F.R.D. 470, 472 (D. Nev. 1998).

[12] 142 F.R.D. 325, 327 (D. Colo. 1992).

[13] *Clark* and *Neal* were cases in which the requesting party was seeking a court order to compel a responding party to provide a signed medical release form. *See* 181 F.R.D. at 471; 142 F.R.D. at 326. Here, the requested medical authorization form was provided voluntarily. Additionally, it is undisputed that Hernandez's counsel had Hernandez's relevant medical records in his physical possession on or about May 15, 2015, more than a week and a half before trial began.

[14] Civ. A. No. 93-3142, 1994 WL 675221, at *4 (E.D. Pa. Nov. 23, 1994); *see also Doe v. District of Columbia*, 231 F.R.D. 27, 35 (D.D.C. 2005) (finding that medical records are in a plaintiff's control and requiring either an authorization for their release or production of the records "if [the plaintiff] has a copy"); *Orleman v. Jumpking, Inc.*, No. CIV. A. 99-2522-CM,

No. 17-11201

We do not need to reach the more difficult question whether the signing of an authorization for release of protected health information is sufficiently responsive to a Rule 34 request for production, because once Hernandez's counsel obtained physical possession of the records, he had a continuing obligation under Rule 26(e) to disclose them to RSI.  By declining to do that, Hernandez failed to meet his obligations under the federal rules, which include a duty to supplement prior disclosures "in a timely manner" if they are incomplete and "if the additional . . . information has not otherwise been made known to the other parties during the discovery process or in writing."  FED. R. CIV. P. 26(e).

Hernandez's disclosure of the initial one-page letter was an incomplete response to at least two of RSI's requests for production of the July 15 records.  Neither Hernandez nor his counsel gave any further indication that additional medical records from that day existed.  Additionally, Hernandez failed to provide RSI with an authorization for release of protected health information as part of his discovery response.  RSI got that authorization only when it approached Hernandez to sign a release.  As the district court highlighted, Hernandez's "discovery response, in effect, told defense counsel that the doctor's letter constituted the only emergency record [Hernandez] had the ability to obtain from the hospital." "Our system of discovery was designed to increase the likelihood that justice will be served in each case, not to promote principles of gamesmanship and deception in which the person who hides the ball most effectively wins the case."  *Abrahamsen v. Trans-State Express, Inc.*, 92 F.3d

---

2000 WL 1114849, at *5 (D. Kan. July 11, 2000) ("[W]here responsive information is in [the defendant's] possession, [the defendant] is obligated to produce the information, whether or not [the] plaintiff has obtained the information from an alternate source.  The rules of discovery do not permit parties to withhold material because the opponent . . . could discover it on their own."); *Bowman v. Consol. Rail Corp.*, 110 F.R.D. 525, 527 (N.D. Ind. 1986) (determining that a party with a legal right to obtain information related to his unemployment benefits was required to provide that information on a Rule 34(a) discovery request).

No. 17-11201

425, 428–29 (6th Cir. 1996).

IV.

Hernandez posits that RSI was not prevented from fully and fairly presenting its case, as contemplated by Rule 60. Additionally, in his reply brief, he contends that "review of discretionary decisions," such as the district court's decision to grant RSI relief from this court's judgment, "is unavailable on an interlocutory appeal pursuant to 28 U.S.C. § 1292(b)."[15]

A.

Section 1292(b) provides, in relevant part, as follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Although "the Court of Appeals' jurisdiction is not confined to the precise question certified by the lower court (because the statute brings the 'order,' [and] not the question, before the court)," our jurisdiction is nonetheless "confined to the particular order appealed from." *United States v. Stanley*, 483 U.S. 669, 677 (1987). "[W]hile we may not reach beyond the [district court's] order to address other orders in the case, we are free to address 'questions that are material to the lower court's certified order'" as part of an interlocutory

---

[15] Hernandez cites *Simon v. G.D. Searle & Co.*, 816 F.2d 397 (8th Cir. 1987), which addressed the appropriate standard of review for the interlocutory appeal and found that although "the questions of law certified by the district court" are reviewed *de novo*, the courts of appeals "remain free to consider 'such questions as are basic to and underlie' the questions certified by the district court." *Id.* at 400 (quoting *Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1335 (7th Cir. 1977)).

appeal.[16]

Accordingly, we have discretion to reach the third issue briefed by the parties if it is material to the certified order.[17]  We review for abuse of discretion the district court's decision to grant Rule 60(b) relief.[18]

The district court based its decision on a finding that RSI was prevented from fully and fairly litigating its case.  That finding was material to the certified order because the order itself pertained exclusively to the motion for relief from judgment.  The district court premised its grant of the motion on a belief that Hernandez had violated the federal discovery rules by failing to turn over relevant medical records and that that failure constituted misconduct as contemplated by Rule 60(b).[19]  Accordingly, we next review, for abuse of discretion, the grant of the Rule 60(b) motion.

## B.

Rule 60(b)(3) permits a court to grant relief from a final judgment or

---

[16] *Spong v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 787 F.3d 296, 304 (5th Cir. 2015) (quoting *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 398 (5th Cir. 2010)).

[17] *See, e.g.*, *Moorman v. UnumProvident Corp.*, 464 F.3d 1260, 1264 (11th Cir. 2006) (reviewing for abuse of discretion, as part of an interlocutory appeal, the denial of a discovery order).  "[R]eview by appellate courts of noncertified questions is also discretionary," so long as the noncertified question is materially related to the order.  *Id.* at 1272.

[18] *See, e.g.*, *United States v. Sealed Juvenile 1*, 151 F. App'x 336, 336 (5th Cir. 2005) (per curiam) ("Before the court is an interlocutory appeal of an order . . . transferring appellant . . . for prosecution as an adult.  Appellant argues that the district court abused its discretion in granting the Government's motion to transfer proceedings . . . to an adult criminal prosecution.  We have reviewed the record . . . and find no abuse of discretion."); *see also United States v. NCR Corp.*, 688 F.3d 833, 837 (7th Cir. 2012) (stating that a preliminary injunction is reviewed using an abuse-of-discretion standard); *Mercantile Tr. Co. Nat'l Ass'n v. Inland Marine Prods. Corp.*, 542 F.2d 1010, 1012 (8th Cir. 1976) (finding, on an interlocutory appeal, that "[t]he proper test in reviewing an order denying leave to amend under [Federal Rule of Civil Procedure] 15(a) is whether the District Court has abused its discretion.").

[19] Judicial efficiency weighs in favor of deciding all three issues presented here as part of this interlocutory appeal instead of waiting for an appeal of the third issue after judgment. *Cf. Moorman*, 464 F.3d at 1272.

No. 17-11201

order for "fraud . . . , misrepresentation, or misconduct by an opposing party." To prevail on a Rule 60(b)(3) motion, a party must establish, by clear and convincing evidence, *see Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978), "(1) that the adverse party engaged in fraud or other misconduct, and (2) that this misconduct prevented the moving party from fully and fairly presenting his case."[20]

1.

The district court made extensive findings that "[Hernandez], often through his attorney, engaged in fraud, misrepresentation, and misconduct in [his] presentations, verbally and in writing, to the court in pretrial matters, during the trial, and in his presentations to the Fifth Circuit in support of his appeal from [the district] court's dismissal of his claims," sufficient to satisfy *Rozier*'s first requirement. Following an exhaustive review of the record, the district court concluded that Hernandez's written submissions "were designed to lead the reader to think that [Hernandez's] sole reason for going to the emergency room on the morning of July 15, 2013, was to obtain care and treatment for a back injury he aggravated while serving a military tour of duty the preceding weekend." The written representations were supported by Hernandez's and his wife's in-court testimony, and at no point did Hernandez "disclose that his reason for going to the emergency room [on] the morning of July 15, 2013, was for treatment of a headache he developed that morning while at home."

In addition to the falsifications made to the district court, Hernandez

---

[20] *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005) (citing *Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place*, 62 F.3d 767, 772 (5th Cir. 1995)). Ultimately, "[t]he purpose of [Rule 60(b)(3)] is to afford parties relief from judgments which are unfairly obtained, not those which may be factually incorrect." *Diaz v. Methodist Hosp.*, 46 F.3d 492, 496 (5th Cir. 1995).

made similar misrepresentations to this court and failed to tender, as part of RSI's request for production, all medical records related to his visit to the emergency room. The district court found that the "record was false in that it failed to disclose [Hernandez's] true reasons for his visit to the hospital emergency room," which affected both the trial and appellate proceedings.

### 2.

The district court also found, by clear and convincing evidence, that the misconduct prevented RSI from having a full and fair opportunity to present its case. The court posited that had "the truth concerning [Hernandez's] reason for admission to the hospital . . . been disclosed during or before the trial, [RSI] would have been in a position to effectively argue," *inter alia*, "that [Hernandez's] failure to be at work [on] the morning of July 15, 2013, was not the result of any military-related injury, or aggravation of an injury, and that during the day of July 15, 2013, [Hernandez] was not convalescing from such an injury or aggravation."

The court also found that the misrepresentations to it, as well as the failure to disclose Hernandez's medical records, affected RSI's initial appeal to this court. Specifically, the district court highlighted an exchange at this court's oral argument between one of the judges and counsel for RSI in which the judge asked counsel whether there was any evidence that rebutted Hernandez's assertion that an aggravation of a preexisting back injury was the basis for his visit to the emergency room. Ultimately, the district court's findings in its order are sufficient to satisfy *Rozier*'s second requirement that the alleged misconduct must have prevented RSI from fully and fairly litigating its case.

### 3.

In *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 925 (1st Cir. 1988), the court

maintained that "where discovery material is deliberately suppressed, its absence can be presumed to have inhibited the unearthing of further admissible evidence adverse to the withholder, that is, to have substantially interfered with the aggrieved party's trial preparation." Although *Anderson* is not binding on this court, its holding is instructive. Here, the misrepresentations by Hernandez, his wife, and his counsel, as well as the failure to disclose medical records responsive to RSI's discovery requests, presumably "inhibited the unearthing" of evidence adverse to Hernandez and "substantially interfered" with defense counsel's preparation.

In this sense, the grant of RSI's motion for relief from our prior judgment was not an abuse of discretion because it was not based on a "clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx*, 496 U.S. 384, 405 (1990). The district court correctly applied our two-pronged test for Rule 60(b)(3) motions, finding, by clear and convincing evidence, that Hernandez engaged in fraud or other misconduct that prevented RSI from fully and fairly litigating its case.

Hernandez contends that *Diaz* bars relief. There, we affirmed the denial of a plaintiff's Rule 60(b)(3) motion for relief that was based on a post-trial allegation of perjury. *Diaz*, 46 F.3d at 496–97. Finding that the plaintiff failed to show by clear and convincing evidence that perjury had occurred and "that any perjured testimony prevented her from fully and fairly presenting her case," we declined to reverse. *Id.* at 497.

*Diaz* is distinguishable on its facts. "If unequivocal evidence establishes that a party willfully perjured himself, and thereby prevented the opposition from fully and fairly presenting its case, use of Rule 60(b)(3) to grant the innocent party a new trial *would* be a proper response." *Id.* (emphasis added). The *Diaz* plaintiff's failure to establish by clear and convincing evidence that the

No. 17-11201

defendant's actions prevented her from fully and fairly litigating her case did not change our *Rozier* standard with respect to Rule 60(b)(3) motions.

In sum, the district court found that RSI established, by clear and convincing evidence, that Hernandez's misconduct prevented it from a full and fair hearing of its case. Thus, the court did not abuse its discretion when it granted relief from judgment.[21]

The order granting relief under Rule 60(b)(3) is AFFIRMED.

---

[21] In the alternative, the district court asserted that RSI "would be entitled to the relief it seeks pursuant to the authority of Rule 60(b)(6)" if not Rule 60(b)(3). Rule 60(b)(6) permits a court to grant relief from a judgment or order for "any other reason that justifies relief." Because RSI was entitled to relief under Rule 60(b)(3) and because the district court did not abuse its discretion in granting such relief, we do not reach the question whether Rule 60(b)(6) provides alternative grounds.

16