# United States Court of Appeals for the Federal Circuit

_____

**CAP EXPORT, LLC,**
*Plaintiff/Counterclaim Defendant-Appellee*

**ABRAHAM AMOUYAL,**
*Third-Party Defendant-Appellee*

**4MODA CORP.,**
*Third-Party Defendant*

**v.**

**ZINUS, INC.,**
*Defendant/Counterclaimant/Third-Party Claimant-Appellant*

**DOES, 1 THROUGH 10, INCLUSIVE,**
*Defendants*

_____

2020-2087

_____

Appeal from the United States District Court for the Central District of California in No. 2:16-cv-00371-SVW-MRW, Judge Stephen V. Wilson.

_____

Decided: May 5, 2021

_____

DAVID BEITCHMAN, Beitchman & Zekian, PC, Encino, CA, argued for plaintiff/counterclaim defendant-appellee

and third-party defendant-appellee.  Also represented by
MILORD A. KESHISHIAN, Milord & Associates, PC, Los Angeles, CA.

    DARIEN WALLACE, Imperium Patent Works LLP,
Pleasanton, CA, argued for defendant/third party plaintiff/counterclaimant-appellant.  Also represented by T.
LESTER WALLACE.

_____

    Before DYK, BRYSON, and HUGHES, *Circuit Judges*.

DYK, *Circuit Judge*.

    Zinus, Inc. ("Zinus") appeals the decision of the United
States District Court for the Central District of California
setting aside a judgment and injunction pursuant to Federal Rule of Civil Procedure 60(b)(3).  We affirm.

## BACKGROUND

    Zinus is the owner of U.S. Patent No. 8,931,123 ("the
'123 patent"), which is directed to "[a]n assemblable mattress support" that "can be shipped in a compact state with
all of its components compactly packed into the headboard."  '123 patent, col. 1 ll. 49–51.  The relevant claims
are independent claims 1–3, which each claim "[a] mattress
support comprising" "a headboard with a compartment"
and other parts, such as "a longitudinal bar" and "a footboard," wherein the other parts "are contained" or "fit inside the compartment."  *Id.* col. 6 l. 21–col. 7 l. 3.  Claim 2
additionally requires "headboard legs" that "are contained
inside the compartment."  *Id.* col. 6 ll. 52–58.  Claim 3 additionally requires that "the compartment is closed with a
zipper."  *Id.* col. 7 ll. 2–3.

    On January 15, 2016, appellee Cap Export, LLC ("Cap
Export") filed a declaratory judgment action against Zinus,
alleging that claims of the '123 patent were invalid and not
infringed.  Zinus counterclaimed, alleging infringement of

claims of the '123 patent and unfair business practices under California state law, and added Abraham Amouyal and 4Moda Corp. as third-party defendants. Appellee Abraham Amouyal is the chief executive officer of Cap Export. 4Moda, which currently appears to be dissolved, is alleged to have sold Cap Export's products in the United States.[1]

On May 16, 2016, Zinus filed a motion for partial summary judgment of no invalidity of claims 1 and 3 of the '123 patent, relying on a declaration provided by Zinus's then-president and "testifying technical expert," Colin Lawrie. J.A. 279.[2] On August 29, 2016, the district court noted that Zinus had "present[ed] some testimony . . . that the patent was valid" in light of prior art raised by Cap Export, and the court allowed Cap Export sixty days to depose Lawrie and "present some contrary opinion" in the form of a surreply. *Id.* at 1312, 1317. Counsel for Cap Export deposed Lawrie on October 11, 2016, during which Lawrie denied knowledge of the existence of various prior art items.

On November 29, 2016, the district court sua sponte granted summary judgment that claims 1 and 3 of the '123 patent were invalid as obvious over other prior art references that are not at issue in this appeal. Zinus appealed, and we vacated and remanded, in part because the district court had improperly granted summary judgment of invalidity sua sponte without proper notice to Zinus and had relied on a prior art reference (the "bed in a box" reference)

---

[1]    Zinus, Cap Export, Amouyal, and the district court seem to treat 4Moda as no longer party to the case.

[2]    According to Lawrie, "throughout the entire period from 2006 up until the end of 2011, [he] was not a corporate officer of [Zinus], Zinus, Inc. (Xiamen), or Zinus, Inc. (Korea)." J.A. 282. "In about 2012," Lawrie became the "Vice President of Sales and Marketing" for Zinus, and then served as the "President" of Zinus from January 2014 up until March 2019. *Id.* at 283.

when there was a factual dispute as to whether it predated the '123 patent. *Cap Exp., LLC v. Zinus, Inc.*, 722 F. App'x 1004, 1007–09 (Fed. Cir. 2018).

On September 11, 2018, Zinus filed another motion for partial summary judgment of no invalidity of claims 1, 2, and 3 of the '123 patent. On January 24, 2019, the district court granted partial summary judgment that claims 1–3 of the '123 patent were not invalid, in part because Cap Export had abandoned the "bed in a box" prior art reference that the district court had relied on in its previous determination of invalidity. In determining validity, "the Court analyzed relevant evidence of 'prior art' references identified by the parties and established that the '123 patent was valid as a matter of law on that basis, because none of the 'prior art' references considered by the Court either anticipated or made obvious the patent claims embodied in the '123 patent." J.A. 2 (citation omitted). Based on the district court's ruling, Zinus, Cap Export, and Abraham Amouyal then stipulated to the entry of a final judgment in favor of Zinus for infringement, which included that claims 1–3 of the '123 patent were not invalid, $1.1 million in damages to be paid by Cap Export and Amouyal, and a permanent injunction against Cap Export and Amouyal, which the district court entered on May 30, 2019.

Thereafter, Cap Export discovered evidence that the October 2016 deposition testimony of Lawrie, the then-president of Zinus, had been false as to the prior art. The discovery of the falsity began when, on June 22, 2019, Zinus filed a lawsuit against Classic Brands, LLC (an unrelated party), also in the Central District of California, alleging in part infringement of the '123 patent. In support of a motion to transfer, Classic Brands filed a declaration that attached a letter with exhibits consisting of documents regarding beds manufactured by a company called Xiamen XinShunYang Industry and Trade Company ("XXITC"), which was located in Xiamen, China. One of the beds allegedly had "all of the components of the bed (except the

headboard) . . . packed inside of a zippered compartment in the headboard." J.A. 4 (citation omitted).[3] The exhibits to the letter also included purchase invoices between XXITC and a Malaysian company called Woody Furniture.

Cap Export, after learning of these documents, sent company representatives to Malaysia to meet with Woody Furniture's representatives. Woody Furniture's representatives provided a 2012 invoice (dated before the filing date of the '123 patent, September 25, 2013) addressed to Jusama Group Consulting Inc.[4] and bearing Colin Lawrie's signature for a purchase of 405 beds from Woody Furniture. According to a declaration from Agnes Tan, the marketing director for Woody Furniture, executed on September 24, 2019, the beds referenced in the invoice had "all components fitting in the headboard, including the footboard and the longitudinal bar, for shipping." J.A. 303, 305.

On September 29, 2019, within a year of the entry of the final judgment and injunction, Cap Export and Abraham Amouyal filed a motion to vacate the judgment and injunction under Rule 60(b)(3), which provides grounds for relief for reason of "fraud . . . , misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3).

---

[3] The lawsuit against Classic Brands was transferred to the District of Maryland. The parties then settled, and the case was dismissed on May 20, 2020.

[4] Jusama was a sales representative for Zinus, Inc. (Korea), "a parent holding company that owns, or at least partially owns, each of the other Zinus companies," including the appellant in this case, and Zinus, Inc. (Korea)'s subsidiaries. J.A. 281–82. Colin Lawrie became part-owner of Jusama in 2005 and sold his share in Jusama "a few years ago," according to his declaration executed in November 2019. *Id.* at 282.

The primary basis of the allegations of fraud and misrepresentation was Lawrie's testimony during the October 11, 2016, deposition. During that deposition, "Cap Export asked [Colin Lawrie], repeatedly, about his knowledge of disassembled beds shipped in a single box with all components stored in the headboard." J.A. 18. Below are examples of such questioning:

> Q. What do you think the novelty or the invention is of the ['123 patent]?
>
> A. The ability to package an unassembled bed into a headboard and have it ship in one box.

J.A. 262.

> Q. Prior to September 2013 had you ever seen a bed that was shipped disassembled in one box?
>
> A. No.
>
> Q. Not even—I'm not talking about everything stored in the headboard, I'm just saying one box.
>
> A. No, I don't think I have.

*Id.* at 263.

> Q. So prior to 2013, September of 2013, the only piece of furniture that you can think of that shipped in one box, disassembled, and the components were contained in another component, was just a cabinet with shelves; is that accurate?
>
> . . . .
>
> Q. That would be then no, just the cabinet essentially?

A.   That I'm aware of.

*Id.* at 265–66.[5]

The district court in the 60(b)(3) proceeding held an initial hearing on the motion and ordered a video deposition to be conducted of Colin Lawrie.  Colin Lawrie also submitted a declaration executed on November 5, 2019, in which he admitted that his October 2016 deposition testimony that he had never seen "a bed that was shipped disassembled in one box" was "literally incorrect," but he asserted that he did not "intend to answer falsely" because he "meant that [he] had not seen a bed shipped disassembled in one box <u>with all of the components in the headboard</u>." *Id.* at 289.  Colin Lawrie's video deposition was thereafter taken in Toronto, Canada, on November 15, 2019, during which he "again acknowledged that his answer of 'No' to the question of whether he had ever seen a bed prior to September 2013 that was shipped disassembled in one box was 'literally incorrect,' but that he did not intend to answer falsely at the deposition." *Id.* at 10–11 (citation omitted).  The district court found Lawrie's explanation to be

---

[5]   In addition to the deposition testimony relied on by the district court, Cap Export asserts that Lawrie made untruthful statements in a declaration filed in support of Zinus's September 11, 2018, motion for partial summary judgment of no invalidity.  For example, in his declaration, executed on August 17, 2018, Lawrie made the following statement:

> 84.      There is no motivation expressed or suggested in any of the Whitford, Aspelund, the Ledge Headboard, or the Ledge Platform Bed to put a longitudinal bar and/or a footboard into a headboard compartment.  There is no such teaching in the prior art.

J.A. 244.

"wholly implausible given how counsel for Cap Export specifically distinguishe[d] between those two concepts." *Id.* at 12.[6]

In determining the falsity of Lawrie's testimony, the district court also relied on other Woody Furniture documents showing sales of these beds in a box to sales agents for the Zinus family of companies (Jusama and HQV),[7] including an invoice for Jusama from 2011 for a sale of 385 beds and a purchase order for HQV for a sale of 415 beds with a shipment date in February 2013. Zinus itself concedes that "[d]ocumentary evidence of the alleged on-sale prior art beds was, throughout the entire course of the underlying litigation up until the day of entry of the final consent judgment, all the while sitting in email form in the possession of Zinus." Appellant's Br. 34.

On May 11, 2020, the district court granted the motion to set aside the May 30, 2019, judgment under Rule 60(b)(3) and vacated the injunction. The court found that

---

[6]    The district court also ordered a video deposition to be conducted of Agnes Tan, who testified that the Woody Furniture beds were shipped disassembled in one box and had all component parts stored within the headboard. The district court found that Tan's declaration and deposition testimony weighed in favor of finding that Lawrie's statements constituted affirmative misrepresentations.

[7]    According to Lawrie, HQV was part owner of Jusama, and Jusama and HQV were "sales representatives" for "Zinus, Inc. (Korea) and its subsidiaries." J.A. 282. Lawrie testified in the October 2016 deposition that HQV was his "own business," *id.* at 1055–56, but he "[did not] have a part of it anymore," *id.* at 1059, and then testified in his November 2016 declaration that HQV was wholly owned by someone named Ely Benzaquen, *id.* at 282. According to Lawrie, "[s]ometimes Jusama did business under the name of HQV." *Id.* at 282.

the purchased Woody Furniture beds were "functionally identical in design to the claims in the '123 patent." J.A. 16. The district court found that Lawrie's "repeated answer of 'No'" to the questioning "regarding his knowledge of beds shipped disassembled in one box" "constituted an affirmative misrepresentation," *id.* at 12, and that "Lawrie's additional, repeated denials that he had knowledge of or experience with beds or other furniture shipped with components stored within another component constitute[d] affirmative misrepresentations of his knowledge based on the repeated purchases of such beds by Jusama from Woody prior to the filing of the '123 patent in September 2013," *id.* at 14–15 (emphasis omitted). Zinus filed a motion for reconsideration, which the district court denied.

Zinus appeals. Because the district court's May 11, 2020, order vacated an injunction, we have jurisdiction under 28 U.S.C. §§ 1292(c)(1), 1295(a)(1).

## DISCUSSION

## I

Before turning to the law of Rule 60(b)(3), it is important to understand the basis of the 60(b)(3) motion. In patent cases, "[a] person shall be entitled to a patent unless . . . the claimed invention was . . . <u>on sale</u>, or otherwise available to the public before the effective filing date of the claimed invention." 35 U.S.C. § 102(a)(1) (emphasis added). This is referred to as the "on-sale bar" provision, which defines a type of "prior art." *Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, 139 S. Ct. 628, 631–32 (2019). Prior art under the on-sale bar can support a determination that a patent claim is invalid as anticipated or obvious. 35 U.S.C. §§ 102(a), 103.[8]

---

8    Because the application for the '123 patent was filed after March 16, 2013, the current versions of 35

Here, in October 2016, Cap Export attempted to determine Lawrie's knowledge of highly material prior art. At the time, Lawrie was Zinus's president and testifying expert witness.[9] Lawrie denied having knowledge of that prior art when asked, prior art that the district court determined to be "functionally identical in design to the claims in the '123 patent." J.A. 16. The district court concluded that Lawrie's October 2016 deposition testimony "misrepresented his prior experience with and knowledge of bed frames that were shipped disassembled in a single box," *id.* at 12, and of beds shipped with components stored within another component, *id.* at 14–15. Lawrie admitted that this testimony was "literally incorrect," at least in

U.S.C. §§ 102(a), 103, as amended by the Leahy-Smith America Invents Act, apply. *See* Pub. L. No. 112-29, § 3(n)(1), 125 Stat. 284, 293; *see also In re Nuvasive, Inc.*, 842 F.3d 1376, 1380–81 nn.3–4 (Fed. Cir. 2016).

[9]    Rule 60(b)(3) requires that the fraud, misrepresentation, or misconduct be by "an opposing party." Fed. R. Civ. P. 60(b)(3); *see also Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1102 (9th Cir. 2006) (alleged fraud by 60(b)(3) movant's attorney could not satisfy the adverse party requirement).

Zinus does not challenge the district court's determination that "Lawrie as president of Zinus can properly be considered an 'adverse party' for the purposes of Rule 60(b)(3)." J.A. 12; *cf. In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 477 (9th Cir. 2015) ("In the context of Rule 10b–5 [of the Securities Exchange Act of 1934], [the Ninth Circuit has] adopted the general rule of imputation and held that a corporation is responsible for a corporate officer's fraud committed 'within the scope of his employment' or 'for a misleading statement made by an employee or other agent who has actual or apparent authority.'" (quoting *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1577 n.28 (9th Cir. 1990) (en banc))).

some respect. *Id.* at 289. The question is whether these misrepresentations support relief under Rule 60(b)(3).

## II

Rule 60(b) provides:

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

. . .

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party[.]

Fed. R. Civ. P. 60(b). A motion under Rule 60(b)(3) "must be made within a reasonable time," and "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). The motion here satisfied the one-year requirement.

"Relief under [Rule 60(b)(3)] is a procedural issue on which we apply regional circuit law." *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1204–05 (Fed. Cir. 2005). "Motions for relief from judgment pursuant to Rule 60(b) are addressed to the sound discretion of the district court and will not be reversed absent an abuse of discretion." *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004). "A district court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." *Id.*

"To prevail [under Rule 60(b)(3)], the moving party must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the

defense." *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000).

The Ninth Circuit has held that "Federal Rule of Civil Procedure 60(b)(3) require[s] that fraud . . . not be discoverable by due diligence before or during the proceedings." *Casey*, 362 F.3d at 1260 (alterations in original) (quoting *Pac. & Arctic Ry. & Navigation Co. v. United Transp. Union*, 952 F.2d 1144, 1148 (9th Cir. 1991)). The Ninth Circuit's additional due diligence requirement appears contrary to the text of Rule 60(b)(3), which does not mention diligence.[10] The parties cite no cases from other courts of appeals adopting this additional requirement, nor are we aware of any other courts of appeals that have adopted it.[11]

---

[10] By contrast, Rule 60(b)(2) provides grounds for relief for reason of "newly discovered evidence that, with <u>reasonable diligence</u>, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2) (emphasis added).

[11] *See Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923–26 (1st Cir. 1988); *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004); *Stridiron v. Stridiron*, 698 F.2d 204, 206–07 (3d Cir. 1983); *Green v. Foley*, 856 F.2d 660, 661 n.1, 665 (4th Cir. 1988) (noting that Rule 60(b)(2) (but not Rule 60(b)(3)) requires due diligence); *Hernandez v. Results Staffing, Inc.*, 907 F.3d 354, 364 (5th Cir. 2018); *Abrahamsen v. Trans-State Express, Inc.*, 92 F.3d 425, 428–29 (6th Cir. 1996); *Fields v. City of Chicago*, 981 F.3d 534, 558 (7th Cir. 2020); *In re Levaquin Prods. Liab. Litig.*, 739 F.3d 401, 404 (8th Cir. 2014); *Thomas v. Parker*, 609 F.3d 1114, 1119–20 (10th Cir. 2010); *Jenkins v. Anton*, 922 F.3d 1257, 1270 (11th Cir. 2019); *In re Hope 7 Monroe St. Ltd.*, 743 F.3d 867, 875 (D.C. Cir. 2014); *see also* 11 Charles Alan Wright, Arthur R. Miller, et al., *Federal Practice and Procedure* § 2860 (3d ed. Oct. 2020) (listing requirements for Rule 60(b)(3)); 12

### III

On appeal here, Zinus contests the district court's determination that Cap Export "met its burden of establishing by clear and convincing evidence that it [was] entitled to relief under Rule 60(b)(3)." J.A. 21.  Zinus focuses primarily on the due diligence requirement, seeming to blame the victim's so-called "incompetent lawyers" for the adverse consequences it suffered as a result of the fraud.  Appellant's Br. 33.  Zinus argues that "emails relating to the Woody shipments would have been discovered if Cap Export's lawyers had exercised due diligence and propounded standard document production requests for a patent case." *Id.* at 38.[12]  Cap Export does not dispute that its written discovery served on Zinus did not specifically seek prior art; that it did not depose the inventor of the '123 patent; and that although a deposition of Lawrie was taken, it was not taken under Federal Rule of Civil Procedure 30(b)(6).

Even though the Ninth Circuit's requirement for Rule 60(b)(3) that the "fraud" not be discoverable through due diligence seems questionable, we follow it here.  *Casey*, 362 F.3d at 1260.  The question is what constitutes due diligence in discovering fraud.  Ninth Circuit cases applying Rule 60(b)(3) do not elaborate on the due diligence requirement, but Ninth Circuit decisions in other contexts provide guidance.

In other contexts, due diligence in discovering fraud does not require investigation unless there is reason to suspect fraud.  For example, "[i]n order to assess whether [a] petitioner exercised due diligence" in discovering fraud (or error) that is the basis for equitable tolling of the deadline

---

James Moore et al., *Moore's Federal Practice – Civil* § 60.43 (2021) (same).

    [12]  Zinus used the term "Cap Export" to refer to Cap Export, LLC and Abraham Amouyal collectively.

to file a motion to reopen removal proceedings, the Ninth Circuit first "determine[s] if (and when) a reasonable person in petitioner's position would suspect the specific fraud or error underlying her motion to reopen," and, only if this is the case, second, "ascertain[s] whether petitioner took reasonable steps to investigate the suspected fraud or error, or, if petitioner is ignorant of counsel's shortcomings, whether petitioner made reasonable efforts to pursue relief." *Avagyan v. Holder*, 646 F.3d 672, 679 (9th Cir. 2011). Similarly, though not specifically limited to fraud, the Antiterrorism and Effective Death Penalty Act allows a second or successive claim for habeas corpus if "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence." 28 U.S.C. § 2244(b)(2)(B)(i). "[T]he due diligence inquiry is a function of whether [a petitioner] had some indication before filing his initial petition that the alleged exculpatory evidence existed. If he had no reason to investigate [the exculpatory evidence], then he could not have been dilatory in failing to investigate further." *Solorio v. Muniz*, 896 F.3d 914, 920 (9th Cir. 2018). In securities fraud, "[w]hile an investor need not have full knowledge of fraud in order reasonably to be expected to investigate worrisome allegations concerning his investments, he will not be presumed to have done so unless the allegations are sufficient to 'excite inquiry' into the possibility of fraudulent conduct." *Berry v. Valence Tech., Inc.*, 175 F.3d 699, 705–06 (9th Cir. 1999) (holding that a particular magazine article "would not have led a reasonable investor to investigate the possibility of fraud").

The issue thus is not whether the conduct of Cap Export's counsel fell below the standard of care for attorneys practicing patent litigation, but whether a reasonable

company in Cap Export's position[13] should have had reason to suspect the fraud—here, that Lawrie had testified falsely—and, if so, took reasonable steps to investigate the fraud.

At least in other contexts, the Ninth Circuit reviews a finding of due diligence (or lack thereof) for clear error. *See, e.g.*, *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 989 (9th Cir. 2017); *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 423 (9th Cir. 1991); *Hasbro Indus., Inc. v. M/S St. Constantine*, 705 F.2d 339, 342 (9th Cir. 1983) (per curiam). Other circuits have similarly applied clear error review. *See, e.g.*, *Wilson v. Beard*, 426 F.3d 653, 660 (3d Cir. 2005); *Berman v. U.S. Forest Serv.*, 408 F.3d 945, 964 (7th Cir. 2005); *Drew v. Dep't of Corrections*, 297 F.3d 1278, 1283, 1287 n.2 (11th Cir. 2002), *overruled on other grounds as recognized in Jones v. Sec'y, Fla. Dep't of Corr.*, 906 F.3d 1339, 1351 (11th Cir. 2018).

On this record, there has been no showing that there was reason to suspect that Lawrie's statements were fraudulent. Cap Export deposed Lawrie, as a person claiming knowledge of the relevant facts, "asked him, repeatedly, about his knowledge of disassembled beds shipped in a single box with all components stored in the headboard," and "Lawrie then repeatedly misrepresented his knowledge of such bed designs." J.A. 18. Cap Export had no reason to suspect fraud. Cap Export "undertook numerous prior art searches that failed to reveal evidence of the Woody Furniture purchases." *Id.* at 26–27. Nor was "[t]he material evidence concealed by Lawrie's misrepresentation . . . widely available, a matter of public record, or information already in Cap Export's possession." *Id.* at 20. We see no clear

---

[13]    Zinus does not argue that the due diligence requirement should be analyzed separately for Abraham Amouyal or 4Moda.

error in the district court's determination that the Ninth Circuit's due diligence requirement was satisfied.[14]

IV

With respect to the other prongs of the test for Rule 60(b)(3), we conclude that the district court also did not abuse its discretion in finding them satisfied.

The district court found that Lawrie's "repeated answer of 'No'" to the questioning "regarding his knowledge of beds shipped disassembled in one box" "constituted an affirmative misrepresentation," and that Lawrie's explanation that he misunderstood the question was "wholly implausible." J.A. 12. The court also found that "Lawrie's additional, repeated denials that he had knowledge of or experience with beds or other furniture shipped with components stored within another component constitute[d] affirmative misrepresentations," *id.* at 14–15 (emphasis

---

[14] This is unlike the situation in *Casey*, a case in which the plaintiff alleged that the defendant, her employer, had violated California's Fair Employment and Housing Act. The basis for the Rule 60(b)(3) motion in *Casey* was that the defendant had "failed to respond to a discovery request [for employment records] made two and a half weeks before the close of discovery," which the plaintiff argued was fraud. 362 F.3d at 1260.

The Ninth Circuit determined that the defendant's "discovery recalcitrance [did] not constitute fraud." *Id.* The court found it "significant" "that this [was] not a case in which it [was] alleged that [the defendant] possessed [the] employment records but falsely denied having them, or the like." *Id.* "This [was] a run-of-the-mill discovery problem for which the rules provide remedies, had they been sought," and the plaintiff "failed to file a motion to compel production of [the] employment records." *Id.* at 1260–61.

omitted). Zinus contests whether these misrepresentations were intentional. The district court found it "highly improbable" that Lawrie, "at the time of his 2016 deposition," "had completely forgotten about" the purchases at issue, which occurred between 2011 and 2013. J.A. 14. "As an appellate court, we defer to such credibility judgments," *Pac. & Arctic Ry.*, 952 F.2d at 1148, and we see no clear error in the district court's determination.[15]

Lastly, the district court found that the evidence of the purchases of the beds "would have been material to Cap Export's arguments against the '123 patent's validity," J.A. 16, and that "Lawrie's misrepresentations regarding his knowledge of those beds 'prevented [Cap Export] from fully and fairly presenting [its] defense,'" *id.* at 16–17 (alterations in original) (quoting *Casey*, 362 F.3d at 1260). Although Zinus contests whether the Woody Furniture beds "qualify as invalidating prior art," Appellant's Br. 32, Zinus raises no argument (separate from its due-diligence argument) that the prior art sales were not highly material or that Cap Export could have fully and fairly presented its case despite Lawrie's misrepresentations. Nor could it.

"[W]hen the case involves the withholding of information called for by discovery, the party need not establish that the result in the case would be altered." *Jones v.*

---

[15] The court also found that Lawrie made affirmative misrepresentations in discussing his business relationships during his deposition in October 2016 by omitting mention of Jusama. The district court found the omission of Jusama was a misrepresentation "in light of . . . the purchases made from Woody by Jusama, . . . and . . . [Lawrie's] later testimony regarding the structure of his business." J.A. 16, 27. We conclude that the district court did not clearly err in determining that Lawrie made affirmative misrepresentations during his October 2016 deposition, including by omitting mention of Jusama.

*Aero/Chem Corp.*, 921 F.2d 875, 879 (9th Cir. 1990) (per curiam) (quoting *Bunch v. United States*, 680 F.2d 1271, 1283 (9th Cir. 1982)) (applying the Rule 60(b)(3) standard to a Rule 59 motion). The Ninth Circuit has suggested that "showing 'the material's likely worth as trial evidence or by elucidating its value as a tool for obtaining meaningful discovery'" could establish that the withholding of the material deprived the movant of a full and fair opportunity to present its case. *Id.* at 879 (quoting *Anderson*, 862 F.2d at 926).

According to the district court, the Woody Furniture beds were "functionally identical in design to the claims in the '123 patent," and "[i]f Lawrie had fully disclosed his prior experience and knowledge of the Woody beds, the evidence Cap Export present[ed] now regarding purchases made in advance of the filing of the '123 patent would have been available for the Court to consider during its prior analysis on obviousness and anticipation, which led to partial summary judgment for Zinus with regard to the '123 patent's validity." J.A. 16. We conclude that the district court did not abuse its discretion in determining that that the misrepresentations prevented Cap Export from fully and fairly presenting its case.

## CONCLUSION

"It is the public interest which is dominant in the patent system." *Mercoid Corp. v. Mid-Continent Inv. Co.*, 320 U.S. 661, 665 (1944). "The far-reaching social and economic consequences of a patent . . . give the public a paramount interest in seeing that patent monopolies spring from backgrounds free from fraud or other inequitable conduct and that such monopolies are kept within their legitimate scope." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 816 (1945). The functioning of the patent system requires that "everything that tends to a full and fair determination of the matters in controversy should be placed before the court." *Keystone Driller Co. v. Gen.*

*Excavator Co.*, 290 U.S. 240, 244 (1933) (quoting 1 Joseph Story, *Commentaries on Equity Jurisprudence* § 98 (W.H. Lyon, Jr. ed., 14th ed. 1918)).

Here, Lawrie, Zinus's president and expert witness, misrepresented his knowledge of highly material prior art. The district court properly declined to condone such conduct. The district court did not abuse its discretion in granting the motion to vacate the judgment under Rule 60(b)(3), and we affirm.

**AFFIRMED**